# IN THE SUPREME COURT OF IOWA

No. 12–0180

Filed June 13, 2014
Amended August 25, 2014

**NICK RHOADES,**

Appellant,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.

The defendant filed a postconviction relief action claiming his guilty plea was invalid. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Christopher R. Clark and Scott A. Schoettes of Lambda Legal Defense & Education Fund, Inc., Chicago, Illinois, and Joseph C. Glazebrook and Dan L. Johnston of Glazebrook & Moe, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kevin R. Cmelik, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kimberly A. Griffith, Assistant County Attorney, for appellee.

Earl B. Kavanaugh of Harrison & Dietz-Kilen, P.L.C., Des Moines, and Tracy L. Welsh, New York, New York, for amicus curiae National Alliance of State and Territorial AIDS Directors, the Center for HIV Law and Policy, and HIV Law Project.

**WIGGINS, Justice.**

A defendant brings a claim alleging his trial counsel provided ineffective assistance of counsel related to the defendant's guilty plea to the crime of criminal transmission of the human immunodeficiency virus (HIV) in violation of Iowa Code section 709C.1 (2007).[1] The district court disagreed and dismissed the defendant's postconviction relief action. The defendant appealed and we transferred the case to our court of appeals. The court of appeals affirmed. On further review, we find the guilty plea record did not contain a factual basis to support the plea. We also find the court in this case cannot use the rule of judicial notice to establish the factual basis in the guilty plea record. Based on the state of medicine both now and at the time of the plea in 2009, we are unable to take judicial notice that an infected individual can transmit HIV, regardless of an infected individual's viral load, when that individual engages in protected anal or unprotected oral sex with an uninfected person. Accordingly, we vacate the decision of the court of appeals and reverse the judgment of the district court. We also remand the case with directions.

### I. Background Facts and Proceedings.

The petitioner in this case, Nick Rhoades, was diagnosed with HIV in 1998. From 1999 to 2005, Rhoades did not receive treatment for his HIV diagnosis. In 2005, Rhoades began consistently receiving medical care for his HIV diagnosis from the University of Iowa Hospitals and Clinics. Every three to six months during this time, Rhoades received

---

[1]The general assembly repealed Iowa Code chapter 709C, and replaced it with new legislation. *See* 2014 Iowa Legis. Serv. S.F. 2297 (West). The governor signed the bill, and it was effective May 30, 2014. *Id.* § 11.

treatment. In the spring of 2008, Rhoades's doctor informed him his HIV viral load was nondetectable.

The events of this case turn on an encounter between Rhoades and A.P. on June 26, 2008. On that evening, Rhoades met A.P. on a social networking site. Rhoades and A.P. began conversing, and subsequently A.P. invited Rhoades to his home in Cedar Falls. Rhoades accepted. A.P. understood Rhoades to be HIV negative, in part because Rhoades's online profile listed him as HIV negative.

In Cedar Falls, Rhoades and A.P. engaged in consensual unprotected oral and protected anal sex. Several days later, A.P. learned Rhoades was potentially HIV positive. A.P. contacted the police, and subsequently the State charged Rhoades with criminal transmission of HIV in violation of Iowa Code section 709C.1.

Rhoades engaged the services of an attorney to defend him in this criminal matter. This was the attorney's first case involving Iowa Code section 709C.1. On May 1, 2009, Rhoades pled guilty to one count of criminal transmission of HIV. The district court accepted the plea. At the sentencing hearing, the district court sentenced Rhoades to a term of imprisonment not to exceed twenty-five years with life parole and required Rhoades be placed on the sex offender registry. The district court retained jurisdiction. Rhoades filed a motion to reconsider the sentence. On September 11, the district court suspended Rhoades's twenty-five year sentence and placed Rhoades on probation for five years. Rhoades did not file a direct appeal.

On March 15, 2010, Rhoades filed an application for postconviction relief pursuant to Iowa Code chapter 822. Rhoades alleged his trial counsel was ineffective for allowing Rhoades to plead guilty by failing to challenge the factual basis of the plea and failing to

complete a proper investigation before the plea hearing. The district court denied Rhoades's application for postconviction relief. Rhoades appealed and we transferred the case to our court of appeals. The court of appeals affirmed. Rhoades requested further review, which we granted.

## II. Issue.

We must determine if Rhoades received ineffective assistance of counsel when he pled guilty to criminal transmission of HIV in violation of Iowa Code section 709C.1.

## III. Standard of Review.

Ineffective-assistance-of-counsel claims are grounded in the Sixth Amendment. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). We review ineffective-assistance-of-counsel claims de novo. *Id.* We review issues of statutory interpretation for correction of errors at law. *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005).

## IV. Elements of the Crime of Criminal Transmission of HIV.

The legislature codified the crime of criminal transmission of HIV in Iowa Code section 709C.1. The Code provides in relevant part:

> 1. A person commits criminal transmission of the human immunodeficiency virus if the person, knowing that the person's human immunodeficiency virus status is positive, does any of the following:
>
> a. Engages in intimate contact with another person.
>
> . . . .
>
> 2. For the purposes of this section:
>
> a. "*Human immunodeficiency virus*" means the human immunodeficiency virus identified as the causative agent of acquired immune deficiency syndrome.
>
> b. "*Intimate contact*" means the intentional exposure of the body of one person to a bodily fluid of another person in

a manner that could result in the transmission of the human immunodeficiency virus.

. . . .

4. This section shall not be construed to require that an infection with the human immunodeficiency virus has occurred for a person to have committed criminal transmission of the human immunodeficiency virus.

5. It is an affirmative defense that the person exposed to the human immunodeficiency virus knew that the infected person had a positive human immunodeficiency virus status at the time of the action of exposure, knew that the action of exposure could result in transmission of the human immunodeficiency virus, and consented to the action of exposure with that knowledge.

Iowa Code § 709C.1. Therefore, to establish the crime of criminal transmission of HIV the State must prove the following elements: (1) "the defendant engaged in intimate contact with [the victim]", (2) at the time of intimate contact the defendant's HIV status was positive, (3) the defendant knew his HIV status was positive, and (4) "[a]t the time of the intimate contact, [the victim] did not know that the defendant had a positive HIV status." *State v. Stevens*, 719 N.W.2d 547, 549 (Iowa 2006). It is also incumbent on the district court to instruct the jury on the definition of "intimate contact" because the legislature has specially defined this phrase in the Iowa Code. *See id.* (recognizing the jury instruction also defined intimate contact to mirror the statutory definition). For purposes of section 709C.1, intimate contact requires "(1) there was an intentional exposure of the body of one person to a bodily fluid of another person, and (2) this occurred in a manner that could result in the transmission of . . . HIV." *Id.* at 550.

In considering the definition of "intimate contact," we have previously defined "could" in the criminal transmission statute as requiring "that transmission of . . . HIV from the infected person to the

exposed person was *possible* considering the circumstances." *State v. Keene*, 629 N.W.2d 360, 365 (Iowa 2001). Although there are multiple definitions of "possible," we have not previously elaborated on what "possible" means here. First, "possible" may mean something "that may or may not occur." *Webster's Third New International Dictionary* 1771 (unabr. ed. 2002). This definition is broad, and some courts have recognized the word "possible" in certain contexts may mean allowing any likelihood of occurrence, no matter how remote. *See Pittsburgh, Cincinnati, Chi. & St. Louis Ry. v. Indianapolis, Columbus, & S. Traction Co.*, 81 N.E. 487, 488 (Ind. 1907) (recognizing a distinction between the word "practicable," which requires reasonableness, and the word "possible"); *Gustafson v. Benda*, 661 S.W.2d 29, 31 (Mo. Ct. App. 1982) (" 'Possible' encompasses the entire range of probability from highly improbable to almost sure . . . ."), *rev'd on other grounds*, 661 S.W.2d 11 (Mo. 1983).

Second, "possible" may mean "having an indicated potential by nature or circumstances." *Webster's Third New International Dictionary* 1771. This definition considers the reality of a thing occurring, rather than a theoretical chance. In *Keene*, we linked possibility to the circumstances present. *See Keene*, 629 N.W.2d at 365. We find useful this commentary by the Eleventh Circuit Court of Appeals:

> The potential for legal liability must be reasonable, not merely theoretical. In considering possible state law claims, possible must mean more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.

*Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (emphasis omitted) (citations omitted) (internal quotation marks omitted). Some

courts have recognized an inherent reasonableness consideration in construing the meaning of "possible" in the context of certain statutes. *See Topeka City Ry. v. Higgs*, 16 P. 667, 674 (Kan. 1888) (recognizing the word "possible" meant capable of being done, among other definitions, yet determining in the context of the statute the phrase required reasonable precautions); *Sullivan v. Mountain States Power Co.*, 9 P.2d 1038, 1047 (Or. 1932) (determining the statutory language "every possible effort" did not require actions that were neither reasonable nor practicable); *Commonwealth v. Allied Bldg. Credits, Inc.*, 123 A.2d 686, 691 (Pa. 1956) (recognizing the definition of "possible" meant capable of happening as contrasted with impossibility, however finding within the context of the statute the word carried a notion of reasonableness).

We find the second definition is more appropriate in the context of this criminal statute for at least two reasons. First, we recognize this statute requires expert medical testimony on the likelihood of transmission of HIV. Experts are not required to testify in absolutes when it comes to causation. *See Bradshaw v. Iowa Methodist Hosp.*, 251 Iowa 375, 383, 101 N.W.2d 167, 172 (1960) (recognizing expert opinions were admissible when the expert was giving testimony that a causal relation was possible, likely, or probable).

Second, and more importantly, we would not want to deprive a person of his or her liberty on the basis the defendant's actions caused something that can only theoretically occur. Causation must be reasonably possible under the facts and circumstances of the case to convict a person of criminal transmission of HIV in violation of Iowa Code section 709C.1.

Thus, to establish a factual basis for Rhoades's guilty plea, the record must establish the four elements of the crime together with the two requirements of the statutory definition of intimate contact.

### V. Attacking a Guilty Plea.

We have recognized at least two ways a defendant may attack his or her guilty plea. First, a defendant may attack his or her guilty plea on the ground the defendant did not receive effective assistance of counsel as required under the Sixth Amendment to the United States Constitution because there was no factual basis to support the defendant's guilty plea. *See State v. Finney*, 834 N.W.2d 46, 54 (Iowa 2013). Second, a defendant may show he or she did not make a knowing and intelligent waiver of a constitutional right when pleading, even if overwhelming evidence shows a factual basis exists. *Id.* at 55. Failure to make a knowing and intelligent waiver of a constitutional right violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. *Id.* at 55.

In this proceeding, Rhoades bases his attack on his guilty plea under the Sixth Amendment by claiming ineffective assistance of counsel. We can parse his argument into two claims. The first claim of ineffective assistance of counsel alleged is that his trial counsel allowed Rhoades to plead guilty when no factual basis existed for the plea and then counsel failed to subsequently file a motion in arrest of judgment. The second claim of ineffective assistance of counsel alleged is that his trial counsel failed to complete a competent investigation before Rhoades pled guilty. We can dispose of this appeal on Rhoades's factual basis claim.

A defendant must prove by a preponderance of evidence "(1) his trial counsel failed to perform an essential duty, and (2) this failure

resulted in prejudice" in order to establish an ineffective-assistance-of-counsel claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)). If trial counsel permits a defendant to plead guilty and waives the defendant's right to file a motion in arrest of judgment when there is no factual basis to support the defendant's guilty plea, trial counsel breaches an essential duty. *State v. Philo*, 697 N.W.2d 481, 485 (Iowa 2005). It is well-settled law that under these circumstances, we presume prejudice. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). At the time of the guilty plea, the record must disclose facts to satisfy all elements of the offense. *Keene*, 629 N.W.2d at 366. We review (1) the prosecutor's statements, (2) the defendant's statements, (3) the minutes of testimony, and (4) the presentence report, if available at the time of the plea, to determine if the record supports a factual basis for the plea. *State v. Ortiz*, 789 N.W.2d 761, 768 (Iowa 2010). We have also allowed the court to take judicial notice of well-known facts to establish a factual basis. *See Keene*, 629 N.W.2d at 366. When analyzing the record, we do not require the record "to show the totality of evidence necessary to support a guilty conviction," but only that the record demonstrates the facts to support the elements of the offense. *Ortiz*, 789 N.W.2d at 768.

**VI. Analysis.**

In deciding this case, we first look to the prosecutor's statements at the plea hearing. The prosecutor made no statements at the plea hearing that contributed to establishing the factual basis. When the district court asked if the prosecutor requested any further factual basis, the prosecutor responded, "No, Your Honor."

Next, we consider the defendant's statements. The colloquy that took place between the district court and Rhoades was as follows:

> THE COURT: What the state would have to prove is that on or about June 26th of 2008, here in Black Hawk County, Iowa, you did knowing that you had human — and I — I apologize. Have a hard time saying the word — immunodeficiency virus, that you knew that you had that, that you were positive for that and that you engaged in intimate contact with another person and you didn't acknowledge or that person didn't know that you had the virus.
>
> Do you understand what it is you would — the state would have to prove?
>
> THE DEFENDANT: I do.
>
> THE COURT: Were you here in Black Hawk County on June 26th?
>
> THE DEFENDANT: I was.
>
> THE COURT: And at that time were you positive for the human immunodeficiency virus?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You were aware of that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did you engage in intimate contact with another person?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did that person not know that you had this virus?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Can the court rely upon the minutes for a factual basis, state?
>
> MS. FANGMAN: Yes, Your Honor.
>
> . . . .

THE COURT: Can the court rely upon the minutes, [defense counsel's name]?

[DEFENSE COUNSEL]: Yes, sir.

This colloquy establishes the factual basis for the elements that Rhoades was aware his HIV status was positive and at the time of his sexual encounter with A.P., A.P. was not aware of his HIV status. We find the colloquy does not establish the facts necessary for the intimate-contact element. It is true the district court informed Rhoades the crime required intimate contact and when the district court asked if he had intimate contact, Rhoades answered in the affirmative. However, intimate contact under the statute has a specific meaning. " '*Intimate contact*' means the intentional exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of the human immunodeficiency virus." Iowa Code § 709C.1(2)(*b*).

In a previous case, we considered whether a plea colloquy between the district court and the defendant established a factual basis. *See Ryan v. Iowa State Penitentiary*, 218 N.W.2d 616, 618 (Iowa 1974). The colloquy was as follows:

> THE COURT: You have told me that you are entering a plea of guilty because you, in fact, did what it charged you here in the county attorney's information?
>
> DEFENDANT: Yes, Your Honor.

*Id.* In finding this inquiry did not establish a factual basis, we stated:

> [The county attorney information] was necessarily couched in the technical language of the criminal statute. Formal criminal accusations almost of necessity include verbiage which might be expected to confound and confuse one unaccustomed to legal parlance. There was no sufficient showing of a factual basis.

*Id.* at 619.

Here, as in *Ryan,* the district court used technical language from the statute that was insufficient to establish a factual basis. The district court asked Rhoades if he had intimate contact with the victim. At most, we can surmise from Rhoades's affirmative response that he had some sort of sexual relations with the victim. *See Webster's Third New International Dictionary* 1184 (defining "intimate" as "engaged in or marked by sexual relations"). Although we do not require a detailed factual basis, we do require the defendant to acknowledge facts that are consistent with the elements of the crime. *See State v. Taylor*, 211 N.W.2d 264, 265 (Iowa 1973) (showing the district court asked the defendant to explain his actions supporting the crime of larceny in the night time and the defendant responded he "took money from the Skelly Station."); *State v. Quinn,* 197 N.W.2d 624, 625 (Iowa 1972) (showing a factual basis for the crime of larceny when, among other evidence, the defendant stated, "I just broke into the place I guess."). On the other hand, the district court's reading of the technical terms in the information and having the defendant agree to those terms is not enough to establish a factual basis for those terms. *See Ryan,* 218 N.W.2d at 619; *see also United States v. Cody,* 438 F.2d 287, 289 (8th Cir. 1971) ("The government's argument that [a factual basis] was fulfilled by the prosecutor reading from the indictment in the presence of the defendant falls far short of demonstrating any factual basis for the defendant's plea.").

We find the district court's reference to intimate contact and Rhoades's acknowledgement he had intimate contact does not establish the necessary factual basis an exchange of bodily fluid took place or that

Rhoades intentionally exposed A.P. to his bodily fluid in a manner that could result in the transmission of HIV.

We next look to the minutes of testimony to see if a factual basis exists to establish Rhoades intentionally exposed A.P. to his bodily fluid in a manner that could result in the transmission of HIV. The minutes of testimony incorporate the police reports prepared by the sheriff's department, which included A.P.'s statements. The minutes of testimony establish A.P. received oral and anal intercourse from Rhoades.[2] It also establishes Rhoades used a condom when performing anal sex. The minutes of testimony do not establish any exposure of bodily fluids between Rhoades and A.P. Thus, the minutes of testimony do not establish a factual basis that an exchange of bodily fluid took place or that Rhoades intentionally exposed A.P. to his bodily fluid. Nor do the minutes of testimony show the likelihood the sexual activity in this case could result in the transmission of HIV.

Next, we consider the presentence investigation report. The report states Rhoades admitted he engaged in consensual intercourse with A.P., and A.P. reported receiving unprotected oral sex and protected anal sex. The presentence investigation report contains the same information contained in the police reports, and similarly does not establish a factual basis.

The last place we look to see if a factual basis exists is by judicial notice of adjudicative facts. An adjudicative fact is "[a] controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court

---

[2]In the postconviction relief hearing, A.P. testified he performed oral sex on Rhoades. However, this statement is outside the record of the guilty plea. Thus, we do not consider this fact in evaluating the factual basis for the guilty plea.

or agency determine how the law applies to those parties." *Black's Law Dictionary* 669 (9th ed. 2009). Under Iowa Rule of Evidence 5.201, a court may take judicial notice of two kinds of adjudicative facts. First, the court may take judicial notice of a fact "generally known within the territorial jurisdiction of the trial court." Iowa R. Evid. 5.201(*b*). Second, the court may take judicial notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.*

Iowa Rule of Evidence 5.201 is nearly identical to the Federal Rule of Evidence 201. *See* Fed. R. Evid. 201. The advisory committee notes to the Federal Rule state "[a]djudicative facts are simply the facts of the particular case" and "[a] high degree of indisputability is the essential prerequisite." Fed. R. Evid. 201 advisory committee's note to subdivision (a). Adjudicative facts concern the immediate parties, including "who did what, where, when, how, and with what motive or intent . . . ." Kenneth Culp Davis, *Judicial Notice*, 55 Colum. L. Rev. 945, 952 (1955). Evidence must support adjudicative facts. *Id.* We have previously recognized adjudicative facts are limited to a particular proceeding. *See Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 836 (Iowa 2002) ("Adjudicative facts relate to the specific parties and their particular circumstances.").

We recognize judicial notice of an adjudicative fact in a prior proceeding does not automatically apply to a future proceeding. Rather, a court must take judicial notice of the adjudicative fact and recognize the same principles that supported the judicial notice in the prior case support judicial notice in the present case. *See State v. Musser*, 721 N.W.2d 734, 747 (Iowa 2006) (recognizing we were again taking judicial notice of a fact we had taken notice of in *Keene*).

In *Keene*, the district court recognized a factual basis existed to support a defendant's conviction of criminal transmission of HIV based on the minutes of testimony and the defendant's statements made during the plea colloquy. 629 N.W.2d at 362. The minutes of testimony indicated the victim and the defendant engaged in consensual, unprotected sexual intercourse and the victim was unaware of the defendant's HIV status. *Id.* Both the victim and the defendant were uncertain if the defendant ejaculated during sexual intercourse, however the defendant admitted that if he did ejaculate he did so only on either his or the victim's stomach. *Id.* at 362–63. The minutes of testimony also indicated a public health nurse would testify to the risk of exposure of HIV during sexual contact. *Id.* at 363.

At the plea colloquy, the defendant stated all witnesses would be truthful if they testified according to the minutes of testimony. *Id.* He further admitted he knew he was HIV positive when he engaged in sexual intercourse with the victim. *Id.* The district court found a factual basis for the crime. *Id.*

On appeal, the defendant argued there was not a factual basis to show how sexual intercourse between he and the victim could result in the transmission of HIV. *Id.* at 366. We disagreed. *See id.* at 367. We determined the minutes of testimony, the defendant's admissions during the plea colloquy, and our recognition of the "fact that . . . HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus" established the factual basis for the crime. *Id.* at 365–66. Accordingly, we found the defendant's ineffective-assistance-of-counsel claim lacked merit. *Id.* at 367. Our judicial notice of the adjudicative facts that HIV may be transmitted through contact

with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus filled in the gaps in the factual basis for Keene's plea.

Keene committed his crime in 1998. *Id.* at 362. In 2003, we again recognized the adjudicative " 'fact that . . . HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus' " continued to be common knowledge to establish the evidence was sufficient to support a conviction under section 709C.1.[3] *Stevens*, 719 N.W.2d at 550–52 (quoting *Keene*, 629 N.W.2d at 365).

Today we are unable to take judicial notice that an infected individual can transmit HIV when an infected person engages in protected anal sex with another person or unprotected oral sex, regardless of the infected person's viral load. The evidence at the postconviction relief hearing[4] shows there have been great strides in the treatment and the prevention of the spread of HIV from 2003 to 2008. It was not apparent in 2009, at the time of the plea, that this fact was "capable of accurate and ready determination by resort to sources whose accuracy" could not reasonably be questioned. *See* Iowa R. Evid. 5.201(*b*). Further, while this fact may have been a commonly held *belief* within the territorial jurisdiction of the trial court, we note the purpose of judicial notice is to show the fact is not subject to reasonable dispute.

---

[3]We also used this fact as one of the reasons Iowa Code section 709C.1 was not void for vagueness under the Due Process Clause of the Fourteenth Amendment. *Musser*, 721 N.W.2d at 745–47.

[4]While we are limited in our review for factual basis to the record before the district court, we are not so limited in our review for an inquiry into whether we will take judicial notice. Rather, we may look to either what was "generally known within the territorial jurisdiction of the trial court" or if the fact was "capable of accurate and ready determination by resort to sources whose accuracy" could not reasonably be questioned. Iowa R. Evid. 5.201(*b*).

*See id.* Here, we find the fact was subject to reasonable dispute. At the time of the plea, Rhoades's viral count was nondetectable, and there is a question of whether it was medically true a person with a nondetectable viral load could transmit HIV through contact with the person's blood, semen or vaginal fluid or whether transmission was merely theoretical. The judicial notice we took in previous cases is subject to reasonable dispute here; thus, it is improper for us to similarly take judicial notice in this case. With the advancements in medicine regarding HIV between 2003 and 2008, we are unable to take judicial notice of the fact that HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus to fill in the gaps to find a factual basis for Rhoades's guilty plea.

Thus, there was not a sufficient factual basis for the district court to accept the plea. Therefore, trial counsel was ineffective for allowing the district court to accept the plea without a factual basis.

**VII. Disposition.**

We vacate the decision of the court of appeals and reverse the judgment of the district court. We remand the case back to the district court to enter judgment finding trial counsel was ineffective. The district court shall order the sentence in Rhoades's criminal case be set aside. Because it is possible the State can establish a factual basis, the district court should order the court in the criminal case to give the State the opportunity to establish a factual basis. *State v. Gines,* 844 N.W.2d 437, 441 (Iowa 2014); *Ryan,* 218 N.W.2d at 620. The district court should further order if the State cannot establish a factual basis, the plea is withdrawn and the State can proceed accordingly. *Gines,* 844 N.W.2d at 442.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except Mansfield and Waterman, JJ., who concur specially, and Zager, J., who dissents.

**MANSFIELD, Justice (concurring specially).**

I join the majority opinion because I do not believe the record provides a factual basis for the conclusion that Nick Rhoades intentionally exposed A.P. to Rhoades's bodily fluids in a manner that could result in the transmission of the HIV virus. However, I write separately because Justice Zager's dissent makes some excellent points, and I want to comment briefly on them.

Although we have not said so as a court, I think the reality is that our court has an expansive view of ineffective assistance of counsel. *See State v. Clay*, 824 N.W.2d 488, 504 (Iowa 2012) (Mansfield, J., concurring specially). In some respects, we are using ineffective assistance as a substitute for a plain error rule, which we do not have in Iowa. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("We do not subscribe to the plain error rule in Iowa, have been persistent and resolute in rejecting it, and are not at all inclined to yield on the point."). One of those areas is guilty pleas, where we vacate a plea whenever the record does not contain a factual basis for each element of the crime, seemingly without regard to counsel's actual competence. *See State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014). In *Gines*, we said:

> Where a factual basis for a charge does not exist, and trial counsel allows the defendant to plead guilty anyway, counsel has failed to perform an essential duty. Prejudice is inherent in such a case. The only inquiry is whether the record shows a factual basis for the guilty plea.

*Id.* (citation omitted) (internal quotation marks omitted).

Thus, even as we use the terminology "ineffective assistance" as a tool to review criminal convictions, I think it is especially important that we not appear to be criticizing counsel when we are talking about a legal

construct of this court. *See Clay*, 824 N.W.2d at 504 (Mansfield, J., concurring specially) (objecting to any general suggestion that a criminal defense attorney who commits ineffective assistance by our standards has also committed an ethical violation). I join the majority opinion in this case, but I do so without finding fault in the performance of Rhoades's defense counsel.

Waterman, J., joins this special concurrence.

**ZAGER, Justice (dissenting).**

I respectfully dissent.  I disagree that counsel was ineffective for allowing Rhoades to plead guilty to the crime of criminal transmission of the human immunodeficiency virus (HIV), as I would find that there is a factual basis to support the plea.

To establish a claim of ineffective assistance of counsel, we have said "a claimant must demonstrate '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.' " *Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011) (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006)).  We have also explained that, when assessing whether counsel breached an essential duty, "counsel's performance is measured against the standard of a reasonably competent practitioner with the presumption that the attorney performed his duties in a competent manner." *State v. Begey*, 672 N.W.2d 747, 749 (Iowa 2003).  This rule is distilled from a thoughtful discussion of the importance of judicial restraint in ineffective-assistance-of-counsel cases. *See Strickland v. Washington*, 466 U.S. 668, 689–90, 104 S. Ct. 2052, 2065–66, 80 L. Ed. 2d 674, 694–95 (1984).  By looking to the rule and overlooking the broader discussion, I believe we miss valuable insights that inform this case.

Against the backdrop of ensuring criminal defendants receive fair trials, the Supreme Court cautioned that

> [j]udicial scrutiny of counsel's performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694. Because Rhoades pled guilty, we are not here examining the defense attorney's trial strategy, but the need for deference remains all the same. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203, 210 (1985) (holding "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"). Whether a criminal case is resolved by a plea or by a trial, counsel's decision to pursue one strategy at the expense of another does not mean counsel has done something unreasonable. "There are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 695.

This court benefits from the aggregated intellects of its members, a record developed in a postconviction relief proceeding, and time. Above all, we can authoritatively interpret the law. It is easy to see that with greater time and resources, this court could devise a different, perhaps better, defense strategy in nearly every criminal case. Likewise, in the context of a guilty plea, we have the benefit of being able to hypothesize a different fact investigation, test different potential outcomes, and debate different legal analyses under alternative constructions of the relevant legal standards. We can then look back and try to reconstruct what was going on in the mind of the attorney when he was advising his client to consider entering into a guilty plea and what the defendant was considering when making the ultimate decision to enter a plea of guilty to the criminal charge.

But, comparing actual counsel's performance, given the realities of criminal defense practice, to imagined counsel's performance under abstract, sterile conditions is not our task. "A fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* I believe the majority in this case forgets that admonition.

In a manner not inconsistent with our caselaw, the majority bases its conclusion the guilty plea was not factually supported on the cold record developed at the guilty plea hearing, without regard to other considerations an attorney might have when evaluating a criminal case. *See State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013) ("Recourse to the entire record is appropriate because . . . the relevant inquiry for purposes of determining the Sixth Amendment claim presented by Finney does not involve an examination of his subjective state of mind at the time the trial court accepted the plea, but instead involves an examination of whether counsel performed poorly by allowing Finney to plead guilty to a crime for which there was no objective factual basis in the record."); *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999) ("In deciding whether a factual basis exists, we consider the entire record before the district court at the guilty plea hearing, including any statements made by the defendant, facts related by the prosecutor, the minutes of testimony, and the presentence report."). In doing so, the majority implicitly perpetuates the view that considering an attorney's "strategic reasons for permitting his [or her] client to plead guilty" would undermine "the public's confidence in our criminal justice system." *State v. Hack*, 545 N.W.2d 262, 263 (Iowa 1996). I disagree with that assertion in this case because it undervalues attorneys' knowledge, skill, and experience. It also

undervalues the client's knowledge and judgment in evaluating the case and making an informed decision about whether to plead guilty.

I do agree a guilty plea must be supported by a factual basis. No attorney should, for instance, allow his or her client to plead guilty to violating a statute that requires the victim to be " '*under* the age of fourteen years,' " when the record clearly shows the victim was "fourteen years of age at the time of the incidents in question." *See id.* (quoting Iowa Code § 702.5 (1993) (emphasis added)). No reason, strategic or otherwise, could account for allowing a plea under circumstances in which the record clearly discloses the deficiency.

The majority finds counsel ineffective because there was not a sufficient factual basis to support Rhoades's guilty plea. According to the majority, the record contains insufficient facts to establish the element of intimate contact under Iowa Code section 709C.1 (2007). Proving this element requires that "(1) there was an intentional exposure of the body of one person to a bodily fluid of another person, and (2) this occurred in a manner that could result in the transmission of the HIV." *State v. Stevens*, 719 N.W.2d 547, 550 (Iowa 2006). The majority finds no sufficient factual basis for satisfying either prong of this element. I believe this is wrong for several reasons.

In reaching its conclusion, the majority devotes insufficient attention to the minimal evidence required to establish a sufficient factual basis for a guilty plea. The majority acknowledges that in reviewing a plea for a factual basis the record need not "show the totality of evidence necessary to support a guilty conviction." *State v. Ortiz*, 789 N.W.2d 761, 768 (Iowa 2010). Rather, it is enough " 'that the facts support the crime.' " *Id.* (quoting *State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001)). What exactly this means is unclear, but we have at least

made clear the facts contained in the record do " 'not necessarily' " have to show " 'the defendant is guilty.' " *Keene*, 630 N.W.2d at 581 (quoting 1A Charles Alan Wright, *Federal Practice & Procedure* § 174, at 199 (1999)).

The record plainly discloses that A.P. performed unprotected oral sex on Rhoades, and the two engaged in protected anal sex where the condom may have failed. The plea colloquy also reveals that Rhoades admitted on the record that he had intimate contact with the victim.[5] The majority dismisses these facts as insufficient to satisfy the two subelements of intimate contact, however, because neither the court nor counsel expanded on the facts on the record with evidence that Rhoades admitted he intentionally exposed the victim to bodily fluid or that the exposure occurred in a manner that could result in the transmission of HIV. I believe the acknowledgement by Rhoades that he had unprotected oral sex with the victim and his admission of intimate contact with the victim, combined with reasonable inferences based on common sense, provides a sufficient factual basis to support the guilty plea.

Had this case gone to a jury trial, jurors would have been instructed to "consider the evidence using [their] observations, common sense, and experience." Iowa State Bar Ass'n, *Iowa Criminal Jury Instruction* 100.7. It would be reasonable then for a defense attorney, in considering whether to advise his or her client to accept a guilty plea, to reflect on how a jury would likely use the fact A.P. performed unprotected oral sex on Rhoades, that there was a possibility of failed

---

[5]THE COURT: And did you engage in intimate contact with another person?

THE DEFENDANT: Yes, sir.

Query: Would the majority have found a factual basis for the plea if the court had said "intimate contact as defined by the Code?"

protection during anal sex, and that Rhoades later apologized to the victim. Having so reflected, a seasoned lawyer might have reasonably concluded jurors would use their common sense and experience to infer a fluid exchange or intentional exposure from the unprotected oral sex; thus, the attorney could have reasonably concluded a jury was likely to convict Rhoades.

Considering the high likelihood of a guilty verdict based on these facts, counsel might reasonably advise his client to plead guilty, allow his client to plead guilty, and not find it necessary to supplement the record with additional, specific facts regarding the intimate contact. While I agree that the ultimate fact of fluid exchange or intentional exposure is disputed in the record, this is not necessarily fatal because counsel, like jurors, should be able to draw inferences from the evidence in the record before them. *Cf. United States v. Heid*, 651 F.3d 850, 856 (8th Cir. 2011) (concluding conduct of alleged coconspirators "does not permit an inference" the coconspirators knew the purpose for which money was to be used and thus holding there was an insufficient factual basis for a guilty plea); *United States v. Cheney*, 571 F.3d 764, 769 (8th Cir. 2009) (finding a sufficient factual basis for a guilty plea after drawing an inference from facts contained in the record). In other words, if lay jurors can draw inferences from the facts in reaching a guilty verdict beyond a reasonable doubt, then a trained attorney should be permitted to do so in relying on a lesser burden of proof. The majority does not explain how the absence from the record of such readily inferable facts overcomes the "strong presumption" counsel provided effective assistance of counsel. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694.

However, I am not suggesting such inferences were even necessary in this case. In demanding the record disclose a fluid exchange or an intentional exposure of Rhoades's bodily fluid to A.P., the majority seems to ignore that counsel's assessment of the factual sufficiency of the plea would have been made in light of Iowa Code section 709C.1 as it had been interpreted "as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695. In *Keene*, a published opinion available at the time of Rhoades's guilty plea, the defendant admitted engaging in unprotected sexual intercourse while knowingly infected with HIV. *See* 629 N.W.2d at 366. The defendant pled guilty, then challenged the criminal-transmission statute as unconstitutionally vague and challenged his plea as factually insufficient. *See id.* at 363. The defendant argued he did not intend to expose his victim to HIV because during their sexual encounter he either did not ejaculate or did so outside of his victim's body. *See id.* at 366. We rejected this argument, calling it "irrelevant" for purposes of the constitutional challenge and the factual-basis challenge. *See id.* ("We conclude our above analysis concerning the vagueness argument applies with equal force to Keene's factual basis claim."); *see also State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (crediting witness's testimony stating that "it is possible to transmit HIV during intercourse even when the man does not ejaculate"). We found Keene's lawyer was not ineffective. *Keene*, 629 N.W.2d at 367.

Thus, at the time when counsel was representing Rhoades, the factual basis for a guilty plea under Iowa Code section 709C.1 could be established without any showing of fluid exchange or intentional exposure of fluid. Even being mindful of the limitations of this record, it does show A.P. performed unprotected oral sex on Rhoades. Under

*Keene*, that was enough. That the record developed at Rhoades's guilty plea in 2008 did not contain evidence of Rhoades's ejaculation is, using this court's word, "irrelevant." *Id.* at 366. To now hold otherwise is to ignore not only the presumption of professional competence to which counsel is entitled, but also our own precedent.

The fact of the unprotected oral sex is also sufficient to establish the intentional exposure "occurred in a manner that could result in the transmission of the HIV," the second element of intimate contact. *Stevens*, 719 N.W.2d at 550. The majority discusses taking judicial notice of the fact that HIV can be transmitted through semen. We took judicial notice of that fact in *Keene*, the majority notes, but the majority declines to do so in this case. *See Keene*, 629 N.W.2d at 365.

Taking judicial notice of the fact is, however, unnecessary under *Stevens*, which followed *Keene* and was also a published opinion at the time of Rhoades's 2008 guilty plea. In *Stevens*, a jury convicted the HIV-positive, oral-sex-recipient defendant under Iowa Code section 709C.1. *See* 719 N.W.2d at 548. The defendant appealed, arguing that judicial notice could not be taken of the transmissibility of HIV through semen in his case because, unlike the defendant in *Keene*, he had not pled guilty. *See id.* at 550. Because *Keene* did not apply, the defendant argued, the State was required to present evidence on the intimate-contact element. *See id.* The State countered, arguing that *Keene*'s significance was not that the court had taken judicial notice, per se, but that taking judicial notice of a fact recognizes that "the jury can be assumed to have the knowledge, common sense, and collective intelligence to know that oral sex resulting in ejaculation could result in the transmission of the HIV." *See id.*

We agreed with the State's argument. *See id.* By taking judicial notice, we explained, *Keene* recognized "what is clearly common knowledge in today's society." *Id.* at 551. Noting *Keene* was a case about sexual intercourse, and not specifically oral sexual intercourse, we went on to explain that "oral sex is a well-recognized means of transmission of the HIV." *See id.* *Stevens* thus holds "that oral sex is a manner of transmission of the HIV." *Id.* at 552.

One might argue that *Stevens* is distinguishable because in that case ejaculation undisputedly occurred, and here it did not. I believe the fact of ejaculation in *Stevens* must be disregarded, however, in order to reconcile *Stevens* with our earlier statement in *Keene* that the fact of ejaculation was irrelevant under the statute. Under this view, the fact of unprotected oral sex is sufficient to satisfy the second prong of the intimate-contact element. Of course in retrospect, one might disagree. But, this was the status of our law in 2008 when Rhodes entered his plea after consultation with counsel. The susceptibility of these cases to different interpretations six years later demonstrates the need for the presumption counsel's assistance was effective. In no event should ambiguity in statutes or our caselaw serve as the foundation for now holding counsel's assistance ineffective.

Supposed ambiguity in the statute and caselaw provides the foundation for the most glaring flaw in the majority's reasoning. In *Keene*, we defined the word "could" in Iowa Code section 709C.1 to mean "that transmission of the HIV from the infected person to the exposed person was *possible* considering the circumstances." 629 N.W.2d at 365. According to the majority, we have never defined "possible." The majority then considers potential meanings of the word, concluding possible

means "reasonably possible," which the majority explains "considers the reality of a thing occurring, rather than a theoretical chance."

The majority concludes we have never defined "possible" under this statute by extracting the definition of "could" from its context in *Keene*. But, considering the definition of "could" in that context leads to a different conclusion about the meaning of possible. We said:

> In enacting this statute, the legislature did not intend "could result" to mean "did result." *See* [Iowa Code] § 709C.1(4). Furthermore, "could" is the past tense of "can," which is defined as "[u]sed *to indicate possibility or probability*." The American Heritage Dictionary 232, 330 (2d college ed. 1985). Thus, for a person to be guilty of violating section 709C.1, it must simply be shown that transmission of the HIV from the infected person to the exposed person was *possible* considering the circumstances.

*Id.* (first emphasis added). We expressly considered a definition of "could" that incorporated a sense of probability, and we rejected it. *See id.* The most reasonable conclusion to draw from this rejection is that this court believed the legislature intended "possible" to mean "theoretically possible," not probable or "reasonably possible." If that implication was not enough, we emphasized "*possible*" when defining could, making all the more clear it meant only possible, not probable. *See id.* The majority simply ignores this context. Having done so, the majority holds an attorney must ensure a guilty plea factually supports not only the law as this court has interpreted it, but also the law as this court might one day interpret it (or reinterpret it).

There is no way to reconcile the majority's conclusion. The strong presumption in favor of an attorney's effective assistance of counsel and the need to suppress hindsight's temptation in favor of an analysis that takes account of the law and the facts as they were at the time of the conduct under review are the hallmark of ineffective-assistance-of-

counsel analysis. In 2008, when counsel examined the record to determine whether the facts met the elements of the criminal-transmission statute, he could have reasonably concluded the guilty plea was factually supported according to the law as it was then. All the necessary facts are in the record, notwithstanding the record's limitations.

Finally, I think we need to keep in mind the underlying purpose of the statute. As testified to by Dr. Meier at the postconviction trial, Iowa Code section 709C.1 is really a disclosure statute. That is, the crime is committed when a person knows he or she is infected with HIV. He or she needs to disclose this fact to the potential sexual partner before engaging in intimate contact with that person. As the statute provides, if he or she discloses their HIV status and the partner engages in intimate contact consensually, there is no crime. *See* Iowa Code § 709C.1(5) (providing an affirmative defense). In the months leading up to the criminal offense, and in the subsequent months prior to Rhoades's decision to plead guilty, we cannot forget it is Rhoades who had all of the relevant facts. Rhoades had all of the medical information regarding his HIV status and his viral load. Rhoades knew whether he should engage in intimate contact, whether this intimate contact needed to be protected or unprotected, the reasons he believed the intimate contact did or did not need to be protected, and whether there was a possibility that the HIV could be transmitted. Nevertheless, Rhoades listed his HIV status on his online dating profile as negative and told A.P. he was "clean" before the two engaged in the intimate contact. After these initial denials, Rhoades finally admitted to A.P. two weeks later in a recorded phone call that he was HIV positive.

In this case, there is no question that the record, when viewed as a whole and allowing all reasonable inferences, provides an ample factual basis for the guilty plea. Rhoades was fully advised and knowledgeable of the elements of the crime, including the need for intimate contact as defined in the statute. He admitted this on the record. Counsel was also fully knowledgeable of the elements of the crime as well. I would not find that counsel was ineffective for allowing Rhoades to plead guilty to the charge without a further development of the facts during the plea colloquy.

We once assured attorneys that they need not "know what the law will become in the future to provide effective assistance of counsel." *Snethen v. State*, 308 N.W.2d 11, 16 (Iowa 1981). They could, we reassured them, provide effective assistance of counsel by standing on "established rules of law." *State v. Schoelerman*, 315 N.W.2d 67, 72 (Iowa 1982). Today's decision must leave counsel with the distinct feeling of having a rug yanked out from under him.

I would affirm the decision of the district court.