# IN THE SUPREME COURT OF IOWA

No. 51 / 04-2066

Filed August 4, 2006

**STATE OF IOWA**,

Appellee,

vs.

**JIMMY DEAN STEVENS**,

Appellant.

---

Appeal from the Iowa District Court for Black Hawk County, Stephen C. Clarke, Judge.

Defendant appeals from conviction of criminal transmission of HIV under Iowa Code section 709C.1 (2003). **AFFIRMED.**

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Ann E. Brenden, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and James Katcher, Assistant County Attorney, for appellee.

**LARSON, Justice.**

Jimmy Dean Stevens has appealed his conviction for criminal transmission of HIV under Iowa Code section 709C.1 (2003), alleging that the district court erred in denying his motion for judgment of acquittal. We affirm.

**I.** *Facts and Prior Proceedings.*

The evidence, when viewed in the light most favorable to the State, reveals the following facts. Stevens, the defendant, was thirty-three years old at the time of the offense. The victim, J.B., was fifteen years old. Both are homosexual and met in an internet chat room for gay men. They exchanged photographs, and according to J.B., he and Stevens engaged in some chat about their sexual preferences.

The two arranged to meet in person that night. J.B.'s mother, believing that Stevens was somehow connected with a university and could assist J.B. in getting into college, consented to Stevens' visit. After Stevens arrived at J.B.'s house, he talked with J.B. and his mother for some time. J.B. and Stevens then went to get fast food. On the way, Stevens stopped at a Kwik Star to use the ATM machine. When he returned to the car, he said he was sexually aroused and wished someone would perform oral sex on him. Stevens drove to a dark location on a street in Waterloo where J.B. and Stevens performed oral sex on each other. Stevens ejaculated into J.B.'s mouth.

Afterwards, J.B. asked Stevens if he was clean, i.e., free from sexually transmitted diseases. Stevens represented that he was clean, and offered to pay for testing if J.B. so wished. The pair then got some food, and Stevens took J.B. home.

Upon returning home, J.B.'s mother, recognizing that they had been gone longer than necessary, informed J.B. that Stevens "looked like he was

a good candidate for AIDS." J.B. again became concerned about sexually transmitted diseases. He made himself vomit and then called Stevens, once more questioning him as to whether he was "clean." Again, Stevens responded that he was.

In reality, Stevens was HIV positive and had been aware of this since 1990. The parties stipulated that,

> [t]he Defendant, Jimmy Dean Stevens, has known since being diagnosed in 1990 that his human immunodeficiency virus (HIV) status is positive.

On the night of his sixteenth birthday, J.B. learned that Stevens was in fact HIV positive. J.B. eventually informed someone of his situation, pressed charges and, at the time of trial, had been tested twice for the HIV. Both results were negative.[1]

Stevens was charged with two offenses: criminal transmission of HIV in violation of Iowa Code section 709C.1 and sexual abuse in the third degree in violation of Iowa Code section 709.4(2)(*c*)(4). Stevens admitted at trial that he had met J.B. online, that he sent nude pictures of himself to J.B., and that he met J.B. in person on the evening in question. He also admitted that he did not tell J.B. about his HIV positive status, as he did not see the need to. However, he denied that he knew J.B. was only fifteen years old when he e-mailed the nude photographs of himself, that he and J.B. talked online about their sexual preferences, and that he intended to or had any sexual encounter with J.B.

When the State rested, and again at the conclusion of the trial, Stevens moved for judgment of acquittal, alleging insufficient evidence to support both counts. The motion was denied. The jury subsequently found

---

[1]The fact that the victim does not actually contract HIV does not impact on the charge, as the statute does not require that HIV actually be transmitted, only that the circumstances were such that it could have been transmitted. *See* Iowa Code § 709C.1(2)(*b*) and (4).

Stevens guilty of both charges, and he was sentenced to twenty-five years on the criminal-transmission-of-HIV charge and ten years on the sexual-abuse charge. They were ordered to run consecutively. Stevens now appeals his conviction for the criminal transmission of HIV, again arguing that insufficient evidence exists to support the conviction.

## II. *Scope of Review.*

We will affirm the denial of a motion for judgment of acquittal if substantial evidence in the record supports each element of the offense challenged by the defendant. *State v. Sayles*, 662 N.W.2d 1, 3 (Iowa 2003). Evidence is substantial if it would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* In making this assessment, this court considers all the evidence and views it in the light most favorable to the State. *Id.*

## III. *Analysis.*

The sole issue on this appeal is the sufficiency of the evidence to support a conviction of criminal transmission of HIV. Specifically, Stevens challenges the evidence supporting the element of the charge, which requires that he engaged in "intimate contact" with another person. *See* Iowa Code § 709C.1(1)(*a*). Stevens characterizes the issue as presenting two questions:

> 1. May fellatio (oral sex) be performed "in a manner that could result in the transmission" of HIV? and
> 2. Did the State prove that fellatio was so performed in this case beyond a reasonable doubt?

Under Iowa law, a person who knows that he or she is HIV positive commits a crime when that person engages in intimate contact with another person. *See* Iowa Code § 709C.1(1)(*a*). "Intimate contact" is defined as,

the intentional exposure of the body of one person to a bodily fluid of another person in a manner that could result in the transmission of the human immunodeficiency virus.

Iowa Code § 709C.1(2)(*b*).

The jury was instructed as follows:

> The State must prove all of the following elements of Criminal Transmission of Human Immunodeficiency Virus (HIV) as alleged in Count I:
>
> 1. Between July 1, 2003, and September 11, 2003, the defendant engaged in intimate contact with [J.B.].
>
> 2. At that time the Defendant's HIV status was positive.
>
> 3. The defendant knew his human immunodeficiency virus (HIV) status was positive.
>
> 4. At the time of the intimate contact, [J.B.] did not know that the defendant had a positive HIV status.
>
> If the State has proved . . . all of these elements, the defendant is guilty of Criminal Transmission of Human Immunodeficiency Virus. If the State has failed to prove any one of the elements, the defendant is not guilty.

The jury instruction defining intimate contact mirrored the legislative definition and informed the jury that the State need not prove that the person exposed actually became infected with the HIV.

It is well established that the State bears the burden of proving beyond a reasonable doubt every element of the crime charged. *See In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368, 375 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *accord State v. McMullin*, 421 N.W.2d 517, 519 (Iowa 1988). The jury was instructed on this principle. Thus, the State was required to prove, as an element of the crime charged, that "intimate contact" took place, i.e., that (1) there was an intentional exposure of the body of one person to a bodily fluid of another

person, and (2) this occurred in a manner that could result in the transmission of the HIV.

Stevens acknowledges that, in *State v. Keene*, 629 N.W.2d 360 (Iowa 2001), this court took judicial notice of the fact that the HIV can be transmitted through bodily fluids. *See Keene*, 629 N.W.2d at 365. However, he argues that *Keene* can be distinguished because *Keene* involved a guilty plea and therefore relieved the State of its burden of proof in that case. *See State v. Young*, 293 N.W.2d 5, 7 (Iowa 1980) ("A plea of guilty, if voluntarily and intelligently made, relieves the prosecution of the burden of proving any facts necessary to support the conviction.") (citation omitted). Given that this relief was not available to the State in the present case, as Stevens denied that "intimate contact" took place, Stevens argues that *Keene* does not apply and that the State was required to introduce evidence on the "intimate contact" element.

The State argues that the significance of *Keene*, in taking judicial notice of the methods of transmission of the HIV, is in giving voice to what is common knowledge—that the HIV can be transmitted via semen and other bodily fluids and that sexual intercourse is a common method of transmitting the virus. The existence of this common knowledge is not dependent upon a guilty plea/nonguilty plea distinction. The State believes that, in light of *Keene* and its conclusion that the statute was sufficient to give notice of what acts were prohibited, the jury can be assumed to have the knowledge, common sense, and collective intelligence to know that oral sex resulting in ejaculation could result in the transmission of the HIV.

The district court reasoned as follows:

> Further, then, with respect to the suggestion that there must be causative proof, the Court looks to the decision of the Supreme Court in *State vs. Keene* . . . . On page 365 the Court, among other things, states: We take judicial notice of the fact

that the HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse in that case is one of the most common methods of passing the virus.

We agree with the State's position and the conclusion of the district court. In *Keene* we took judicial notice of "the fact that the HIV may be transmitted through contact with an infected individual's blood, semen or vaginal fluid, and that sexual intercourse is one of the most common methods of passing the virus." *Keene*, 629 N.W.2d at 365. "To be capable of being judicially noticed, a matter must be of common knowledge or capable of certain verification." *Motor Club of Iowa v. Dep't of Transp.*, 251 N.W.2d 510, 517 (Iowa 1977); *see also* 22A C.J.S. *Criminal Law* § 658, at 302 (1989) ("Courts take judicial notice of facts within the common experience or knowledge of every person of ordinary understanding and intelligence, and of such things as are, or generally should be, known in their respective jurisdictions. A fact may be judicially noticed where it is so universally and commonly known as to carry its own indicia of correctness . . . ."). Therefore, only facts to which sufficient notoriety attach so as to make it safe and proper to assume their existence without specific proof should be judicially noticed. *State v. Ladd*, 252 Iowa 487, 490, 106 N.W.2d 100, 101 (1960). By taking judicial notice in *Keene* that certain bodily fluids can transmit the HIV and that sexual intercourse is a manner of transmission of the HIV, we acknowledged what is, in fact, common knowledge. Therefore, the significance of *Keene* lies not in the underlying basis of the case, i.e., whether a plea of guilty or not guilty was entered, but in its recognition of what is clearly common knowledge in today's society.[2] *See Keene*, 629 N.W.2d at 365 ("any reasonably intelligent person is aware

---

[2]Notably, we took judicial notice of these matters in *Keene* when considering Keene's constitutional challenge to the statute, not only in analyzing the existence of a factual basis for his guilty plea.

it is possible to transmit HIV during sexual intercourse, especially when it is unprotected").

Admittedly, *Keene* referenced "sexual intercourse" as the manner of transmission of the virus, as the case involved potential transmission via vaginal intercourse. "Sexual intercourse" has not been defined by our legislature. In that situation, we look to the common meaning of the phrase. *State v. Tesch*, 704 N.W.2d 440, 451 (Iowa 2005). "The dictionary provides a ready source for the common meaning of a word or phrase." *Id.* Webster's dictionary defines "sexual intercourse" as:

> 1: heterosexual intercourse involving penetration of the vagina by the penis: coitus 2: intercourse involving genital contact between individuals other than penetration of the vagina by the penis.

*Webster's Third New International Dictionary* 2082 (unabridged 1986). Under this definition, *Keene* should be read as taking judicial notice of the very issue before this court, i.e., sexual intercourse may be committed through oral sex. In any event, oral sex is a well-recognized means of transmission of the HIV. *See People v. Russell*, 630 N.E.2d 794, 795 (Ill. 1994) (court took judicial notice that intimate sexual contact whereby blood or semen of an infected person is transferred to an uninfected person is a primary method of spreading the infection); *People v. Dempsey*, 610 N.E.2d 208, 223 (Ill. Ct. App. 1993) ("In the instant case, defendant placed his penis in the mouth of the victim and ejaculated semen. Defendant acknowledged that semen is a bodily fluid well known as a transmitter of the HIV. *Oral sexual intercourse is a penetrative sexual contact which is recognized as allowing transmission of the virus.* Thus, defendant clearly exposed the body of another to his bodily fluid in a manner that could result in the transmission of HIV." (Emphasis added.)); *Recreational Devs. of Phoenix, Inc. v. City of Phoenix*, 83 F. Supp. 2d 1072, 1101 (D. Ariz. 1999), *aff'd*, 238 F.3d 430 (9th Cir. 2000) ("It is

common knowledge that engaging in sexual intercourse and oral sex without the use of condoms place people at risk for sexually transmitted diseases, including HIV/AIDS."); *see also* Alan Stephens, Annotation, *Transmission or Risk of Transmission of Human Immunodeficiency Virus (HIV) or Acquired Immunodeficiency Syndrome (AIDS) as Basis for Prosecution or Sentencing in Criminal or Military Discipline Case*, 13 A.L.R.5th 628 (1993) (It is "generally known" that the HIV is "spread by the transfer of bodily fluids such as blood, genital secretions, and perhaps saliva.").

In addition to courts accepting as common knowledge methods of transmission of the HIV, the legislature has also done so. *See* Iowa Code § 915.40(11) (presumption of significant exposure to the HIV when infected individual engages in sexual intercourse, including oral sex); *id.* § 709C.1(1)(*b*) (recognizing semen and blood as potentially infectious bodily fluids).

By recognizing that it is common knowledge that oral sex is a manner of transmission of the HIV, we find that the State did not fail to meet its burden of proof. Importantly, " '[j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved.' " *State v. Manning*, 224 N.W.2d 232, 236 (Iowa 1974) (quoting 75 Am. Jur. 2d *Trial* § 1019, at 860); *see also State v. Post*, 286 N.W.2d 195, 203 (Iowa 1979) (history, common sense, and experience are factors to be considered in determining whether there is a rational connection between basic facts that the prosecution has proved and the ultimate fact presumed).

This is not the first time we have determined that jurors could rely on their common knowledge to support a conviction. *See State v. Theodore,*

150 N.W.2d 612, 616 (Iowa 1967) (jurors could find from common knowledge and experience that ninety-one boxes of loins, five boxes of cooked hams, three boxes of smoked hams, and one box of shankless hams, which allegedly were subject of conspiracy to commit felony larceny and/or embezzlement, were worth more than $20, even though no evidence had been presented on the value of the meat).

We conclude that the State produced substantial evidence to support a finding of "intentional exposure of the body of one person to a bodily fluid of another person . . . ." We therefore affirm.

**AFFIRMED.**