ZAGER, Justice
(dissenting).
I respectfully dissent. I disagree that counsel was ineffective for allowing Rhoades to plead guilty to the crime of criminal transmission of the human immunodeficiency virus (HIV), as I would find that there is a factual basis to support the plea.
To establish a claim of ineffective assistance of counsel, we have said “a claimant must demonstrate ‘(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.’ ” Lado v. State, 804 N.W.2d 248, 251 (Iowa 2011) (quoting State v. Straw, 709 N.W.2d 128, 188 (Iowa 2006)). We have also explained that, when assessing whether counsel breached an essential duty, “counsel’s performance is measured against the standard of a reasonably competent practitioner with the presumption that the attorney performed his duties in a competent manner.” State v. Begey, 672 N.W.2d 747, 749 (Iowa 2003). This rule is distilled from a thoughtful discussion of the importance of judicial restraint in ineffective-assistance-of-counsel cases. See Strickland v. Washington, 466 U.S. 668, 689-90, 104 S.Ct. 2052, 2065-66, 80 L.Ed.2d 674, 694-95 (1984). By looking to the rule and overlooking the broader discussion, I believe we miss valuable insights that inform this case.
Against the backdrop of ensuring criminal defendants receive fair trials, the Supreme Court cautioned that
[jjudicial scrutiny of counsel’s performance must be highly deferential [because] [i]t is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.
Id. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Because Rhoades pled guilty, we are not here examining the defense attorney’s trial strategy, but the need for deference remains all the same. See Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985) (holding “that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel”). Whether a criminal case is resolved by a plea or by a trial, counsel’s decision to pursue one strategy at the expense of another does not mean counsel has done something unreasonable. “There are countless ways to *35 provide effective assistance in any given case.” Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 695.
This court benefits from the aggregated intellects of its members, a record developed in a postconviction relief proceeding, and time. Above all, we can authoritatively interpret the law. It is easy to see that with greater time and resources, this court could devise a different, perhaps better, defense strategy in nearly every criminal case. Likewise, in the context of a guilty plea, we have the benefit of being able to hypothesize a different fact investigation, test different potential outcomes, and debate different legal analyses under alternative constructions of the relevant legal standards. We can then look back and try to reconstruct what was going on in the mind of the attorney when he was advising his client to consider entering into a guilty plea and what the defendant was considering when making the ultimate decision to enter a plea of guilty to the criminal charge.
But, comparing actual counsel’s performance, given the realities of criminal defense practice, to imagined counsel’s performance under abstract, sterile conditions is not our task. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Therefore, “a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Id. I believe the majority in this case forgets that admonition.
In a manner not inconsistent with our caselaw, the majority bases its conclusion the guilty plea was not factually supported on the cold record developed at the guilty plea hearing, without regard to other considerations an attorney might have when evaluating a criminal case. See State v. Finney, 834 N.W.2d 46, 62 (Iowa 2013) (“Recourse to the entire record is appropriate because ... the relevant inquiry for purposes of determining the Sixth Amendment claim presented by Finney does not involve an examination of his subjective state of mind at the time the trial court accepted the plea, but instead involves an examination of whether counsel performed poorly by allowing Finney to plead guilty to a crime for which there was no objective factual basis in the record.”); State v. Schminkey, 597 N.W.2d 785, 788 (Iowa 1999) (“In deciding whether a factual basis exists, we consider the entire record before the district court at the guilty plea hearing, including any statements made by the defendant, facts related by the prosecutor, the minutes of testimony, and the presentence report.”). In doing so, the majority implicitly perpetuates the view that considering an attorney’s “strategic reasons for permitting his [or her] client to plead guilty” would undermine “the public’s confidence in our criminal justice system.” State v. Hack, 545 N.W.2d 262, 263 (Iowa 1996). I disagree with that assertion in this case because it undervalues attorneys’ knowledge, skill, and experience. It also undervalues the client’s knowledge and judgment in evaluating the case and making an informed decision about whether to plead guilty.
I do agree a guilty plea must be supported by a factual basis. No attorney should, for instance, allow his or her client to plead guilty to violating a statute that requires the victim to be “ ‘under the age of fourteen years,’ ” when the record clearly shows the victim was “fourteen years of age at the time of the incidents in question.” See id. (quoting Iowa Code § 702.5 *36 (1993) (emphasis added)). No reason, strategic or otherwise, could account for allowing a plea under circumstances in which the record clearly discloses the deficiency.
The majority finds counsel ineffective because there was not a sufficient factual basis to support Rhoades’s guilty plea. According to the majority, the record contains insufficient facts to establish the element of intimate contact under Iowa Code section 709C.1 (2007). Proving this element requires that “(1) there was an intentional exposure of the body of one person to a bodily fluid of another person, and (2) this occurred in a manner that could result in the transmission of the HIV.” State v. Stevens, 719 N.W.2d 547, 550 (Iowa 2006). The majority finds no sufficient factual basis for satisfying either prong of this element. I believe this is wrong for several reasons.
In reaching its conclusion, the majority devotes insufficient attention to the minimal evidence required to establish a sufficient factual basis for a guilty plea. The majority acknowledges that in reviewing a plea for a factual basis the record need not “show the totality of evidence necessary to support a guilty conviction.” State v. Ortiz, 789 N.W.2d 761, 768 (Iowa 2010). Rather, it is enough “ ‘that the facts support the crime.’” Id. (quoting State v. Keene, 630 N.W.2d 579, 581 (Iowa 2001)). What exactly this means is unclear, but we have at least made clear the facts contained in the record do “ ‘not necessarily’ ” have to show “ ‘the defendant is guilty.’ ” Keene, 630 N.W.2d at 581 (quoting 1A Charles Alan Wright, Federal Practice & Procedure § 174, at 199 (1999)).
The record plainly discloses that A.P. performed unprotected oral sex on Rhoades, and the two engaged in protected anal sex where the condom may have failed. The plea colloquy also reveals that Rhoades admitted on the record that he had intimate contact with the victim.[5] The majority dismisses these facts as insufficient to satisfy the two subelements of intimate contact, however, because neither the court nor counsel expanded on the facts on the record with evidence that Rhoades admitted he intentionally exposed the victim to bodily fluid or that the exposure occurred in a manner that could result in the transmission of HIV. I believe the acknowledgement by Rhoades that he had unprotected oral sex with the victim and his admission of intimate contact with the victim, combined with reasonable inferences based on common sense, provides a sufficient factual basis to support the guilty plea.
Had this case gone to a jury trial, jurors would have been instructed to “consider the evidence using [their] observations, common sense, and experience.” Iowa State Bar Ass’n, Iowa Criminal Jury Instruction 100.7. It would be reasonable then for a defense attorney, in considering whether to advise his or her client to accept a guilty plea, to reflect on how a jury would likely use the fact A.P. performed unprotected oral sex on Rhoades, that there was a possibility of failed protection during anal sex, and that Rhoades later apologized to the victim. Having so reflected, a seasoned lawyer might have reasonably concluded jurors would use their common sense and experience to infer a fluid exchange or intentional exposure from the unprotected oral sex; thus, the *37 attorney could have reasonably concluded a jury was likely to convict Rhoades.
Considering the high likelihood of a guilty verdict based on these facts, counsel might reasonably advise his client to plead guilty, allow his client to plead guilty, and not find it necessary to supplement the record with additional, specific facts regarding the intimate contact. While I agree that the ultimate fact of fluid exchange or intentional exposure is disputed in the record, this is not necessarily fatal because counsel, like jurors, should be able to draw inferences from the evidence in the record before them. Cf. United States v. Heid, 651 F.3d 850, 856 (8th Cir.2011) (concluding conduct of alleged coconspirators “does not permit an inference” the coconspirators knew the purpose for which money was to be used and thus holding there was an insufficient factual basis for a guilty plea); United States v. Cheney, 571 F.3d 764, 769 (8th Cir.2009) (finding a sufficient factual basis for a guilty plea after drawing an inference from facts contained in the record). In other words, if lay jurors can draw inferences from the facts in reaching a guilty verdict beyond a reasonable doubt, then a trained attorney should be permitted to do so in relying on a lesser burden of proof. The majority does not explain how the absence from the record of such readily inferable facts overcomes the “strong presumption” counsel provided effective assistance of counsel. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.
However, I am not suggesting such inferences were even necessary in this case. In demanding the record disclose a fluid exchange or an intentional exposure of Rhoades’s bodily fluid to A.P., the majority seems to ignore that counsel’s assessment of the factual sufficiency of the plea would have been made in light of Iowa Code section 709C.1 as it had been interpreted “as of the time of counsel’s conduct.” Strickland, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. In Keene, a published opinion available at the time of Rhoades’s guilty plea, the defendant admitted engaging in unprotected sexual intercourse while knowingly infected with HIV. See 629 N.W.2d at 366. The defendant pled guilty, then challenged the criminal-transmission statute as unconstitutionally vague and challenged his plea as factually insufficient. See id. at 363. The defendant argued he did not intend to expose his victim to HIV because during their sexual encounter he either did not ejaculate or did so outside of his victim’s body. See id. at 366. We rejected this argument, calling it “irrelevant” for purposes of the constitutional challenge and the factual-basis challenge. See id. (“We conclude our above analysis concerning the vagueness argument applies with equal force to Keene’s factual basis claim.”); see also State v. Musser, 721 N.W.2d 758, 761 (Iowa 2006) (crediting witness’s testimony stating that “it is possible to transmit HIV during intercourse even when the man does not ejaculate”). We found Keene’s lawyer was not ineffective. Keene, 629 N.W.2d at 367.
Thus, at the time when counsel was representing Rhoades, the factual basis for a guilty plea under Iowa Code section 709C.1 could be established without any showing of fluid exchange or intentional exposure of fluid. Even being mindful of the limitations of this record, it does show A.P. performed unprotected oral sex on Rhoades. Under Keene, that was enough. That the record developed at Rhoades’s guilty plea in 2008 did not contain evidence of Rhoades’s ejaculation is, using this court’s word, “irrelevant.” Id. at 366. To now hold otherwise is to ignore not only the presumption of professional competence to which counsel is entitled, but also our own precedent.
*38 The fact of the unprotected oral sex is also sufficient to establish the intentional exposure “occurred in a manner that could result in the transmission of the HIV,” the second element of intimate contact. Stevens, 719 N.W.2d at 550. The majority discusses taking judicial notice of the fact that HIV can be transmitted through semen. We took judicial notice of that fact in Keene, the majority notes, but the majority declines to do so in this case. See Keene, 629 N.W.2d at 365.
Taking judicial notice of the fact is, however, unnecessary under Stevens, which followed Keene and was also a published opinion at the time of Rhoades’s 2008 guilty plea. In Stevens, a jury convicted the HIV-positive, oral-sex-recipient defendant under Iowa Code section 709C.1. See 719 N.W.2d at 548. The defendant appealed, arguing that judicial notice could not be taken of the transmissibility of HIV through semen in his case because, unlike the defendant in Keene, he had not pled guilty. See id. at 550. Because Keene did not apply, the defendant argued, the State was required to present evidence on the intimate-contact element. See id. The State countered, arguing that Keene ⅛ significance was not that the court had taken judicial notice, per se, but that taking judicial notice of a fact recognizes that “the jury can be assumed to have the knowledge, common sense, and collective intelligence to know that oral sex resulting in ejaculation could result in the transmission of the HIV.” See id.
We agreed with the State’s argument. See id. By taking judicial notice, we explained, Keene recognized “what is clearly common knowledge in today’s society.” Id. at 551. Noting Keene was a case about sexual intercourse, and not specifically oral sexual intercourse, we went on to explain that “oral sex is a well-recognized means of transmission of the HIV.” See id. Stevens thus holds “that oral sex is a manner of transmission of the HIV.” Id. at 552.
One might argue that Stevens is distinguishable because in that case ejaculation undisputedly occurred, and here it did not. I believe the fact of ejaculation in Stevens must be disregarded, however, in order to reconcile Stevens with our earlier statement in Keene that the fact of ejaculation was irrelevant under the statute. Under this view, the fact of unprotected oral sex is sufficient to satisfy the second prong of the intimate-contact element. Of course in retrospect, one might disagree. But, this was the status of our law in 2008 when Rhoades entered his plea after consultation with counsel. The susceptibility of these cases to different interpretations six years later demonstrates the need for the presumption counsel’s assistance was effective. In no event should ambiguity in statutes or our caselaw serve as the foundation for now holding counsel’s assistance ineffective.
Supposed ambiguity in the statute and caselaw provides the foundation for the most glaring flaw in the majority’s reasoning. In Keene, we defined the word “could” in Iowa Code section 709C.1 to mean “that transmission of the HIV from the infected person to the exposed person was possible considering the circumstances.” 629 N.W.2d at 365. According to the majority, we have never defined “possible.” The majority then considers potential meanings of the word, concluding possible means “reasonably possible,” which the majority explains “considers the reality of a thing occurring, rather than a theoretical chance.”
The majority concludes we have never defined “possible” under this statute by extracting the definition of “could” from its context in Keene. But, considering the definition of “could” in that context leads *39 to a different conclusion about the meaning of possible. We said:
In enacting this statute, the legislature did not intend “could result” to mean “did result.” See [Iowa Code] § 709C.1(4). Furthermore, “could” is the past tense of “can,” which is defined as “[u]sed to indicate possibility or probability.” The American Heritage Dictionary 232, 330 (2d college ed.1985). Thus, for a person to be guilty of violating section 709C.1, it must simply be shown that transmission of the HIV from the infected person to the exposed person was possible considering the circumstances.
Id. (first emphasis added). We expressly considered a definition of “could” that incorporated a sense of probability, and we rejected it. See id. The most reasonable conclusion to draw from this rejection is that this court believed the legislature intended “possible” to mean “theoretically possible,” not probable or “reasonably possible.” If that implication was not enough, we emphasized “possible ” when defining could, making all the more clear it meant only possible, not probable. See id. The majority simply ignores this context. Having done so, the majority holds an attorney must ensure a guilty plea factually supports not only the law as this court has interpreted it, but also the law as this court might one day interpret it (or reinterpret it).
There is no way to reconcile the majority’s conclusion. The strong presumption in favor of an attorney’s effective assistance of counsel and the need to suppress hindsight’s temptation in favor of an analysis that takes account of the law and the facts as they were at the time of the conduct under review are the hallmark of ineffective-assistance-of-counsel analysis. In 2008, when counsel examined the record to determine whether the facts met the elements of the criminal-transmission statute, he could have reasonably concluded the guilty plea was factually supported according to the law as it was then. All the necessary facts are in the record, notwithstanding the record’s limitations.
Finally, I think we need to keep in mind the underlying purpose of the statute. As testified to by Dr. Meier at the postconviction trial, Iowa Code section 709C.1 is really a disclosure statute. That is, the crime is committed when a person knows he or she is infected with HIV. He or she needs to disclose this fact to the potential sexual partner before engaging in intimate contact with that person. As the statute provides, if he or she discloses their HIV status and the partner engages in intimate contact consensually, there is no crime. See Iowa Code § 709C.1(5) (providing an affirmative defense). In the months leading up to the criminal offense, and in the subsequent months prior to Rhoades’s decision to plead guilty, we cannot forget it is Rhoades who had all of the relevant facts. Rhoades had all of the medical information regarding his HIV status and his viral load. Rhoades knew whether he should engage in intimate contact, whether this intimate contact needed to be protected or unprotected, the reasons he believed the intimate contact did or did not need to be protected, and whether there was a possibility that the HIV could be transmitted. Nevertheless, Rhoades listed his HIV status on his online dating profile as negative and told A.P. he was “clean” before the two engaged in the intimate contact. After these initial denials, Rhoades finally admitted to A.P. two weeks later in a recorded phone call that he was HIV positive.
In this case, there is no question that the record, when viewed as a whole and allowing all reasonable inferences, provides an ample factual basis for the guilty plea. *40 Rhoades was folly advised and knowledgeable of the elements of the crime, including the need for intimate contact as defined in the statute. He admitted this on the record. Counsel was also fully knowledgeable of the elements of the crime as well. I would not find that counsel was ineffective for allowing Rhoades to plead guilty to the charge without a further development of the facts during the plea colloquy.
We once assured attorneys that they need not “know what the law will become in the future to provide effective assistance of counsel.” Snethen v. State, 308 N.W.2d 11, 16 (Iowa 1981). They could, we reassured them, provide effective assistance of counsel by standing on “established rules of law.” State v. Schoelerman, 315 N.W.2d 67, 72 (Iowa 1982). Today’s decision must leave counsel with the distinct feeling of having a rug yanked out from under him.
I would affirm the decision of the district court.

. THE COURT: And did you engage in intimate contact with another person?
THE DEFENDANT: Yes, sir.
Query: Would the majority have found a factual basis for the plea if the court had said “intimate contact as defined by the Code?”